NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAE TECHNOLOGIES HONG KONG LIMITED,**<br><br>Petitioner,<br><br>v.<br><br>**OLUBUKUNMI OLUFEMI DEMUREN,**<br><br>Respondent. | Civil Action No. 23-2314 (ZNQ)<br><br>**MEMORANDUM OPINION** |

**BONGIOVANNI, United States Magistrate Judge:**

This matter comes before the Court on the motion of Respondent, Olubukunmi Olufemi Demuren ("Mr. Demuren"), for an order quashing the subpoena served upon it by Petitioner, LAE Technologies Hong Kong Limited ("LAE"), and vacating this Court's Order entered on May 31, 2023, authorizing the issuance of the subpoena pursuant to 28 U.S.C. § 1782. LAE opposes Mr. Demuren's motion. The Court has reviewed and considered the arguments raised by the parties in favor of and in opposition to Mr. Demuren's motion. The Court decides the motion on the papers without oral argument pursuant to FED.R.CIV.P. ("Rule") 78 and L.Civ.R. 78.1(b). For the reasons set forth below, Mr. Demuren's motion is GRANTED in part and DENIED in part.

I.     **Factual and Procedural Background**

On April 26, 2023, LAE filed an *ex parte* motion seeking the issuance of Letters Rogatory pursuant to 28 U.S.C. § 1782, permitting it to serve a subpoena for both documents and deposition testimony from Mr. Demuren. Mr. Demuren is a part-owner, director, and the Chief Executive Officer of RemX Limited. (*See* Wu Decl. ¶ 8; Docket Entry No. 3). He is also a resident of the

state of New Jersey and a non-party to the legal proceedings pending in Hong Kong. (*See id*. ¶¶ 4,9; Resp. Br. at 1).

LAE sought to use the information obtained from Mr. Demuren in connection with the following two foreign legal proceedings pending in Hong Kong: *LAE Technologies Hong Kong Limited v. RemX Limited*, [2021] H.K.S.A.R. (H.C.A. 346/2021) and *RemX Limited v LAE Technologies Hong Kong Limited* [2021] H.K.S.A.R. (H.C.A. 361/2021) (collectively, the "Hong Kong Matters"). The Hong Kong Matters concern two agreements entered between LAE and RemX Limited ("RemX"): (1) the Value Added Reseller Agreement (the "VAR") dated October 17, 2020; and (2) the Coin Management and Custody Agreement, referred to as the "Over the Counter" Agreement (the "OTC"), dated November 14, 2020. (*See* Wu Decl. ¶5, Docket Entry No. 3; Resp. Br. at 4, Docket Entry No. 9-1). In the Hong Kong Matters, the parties dispute whether the VAR or the OTC is the actual operative contractual agreement, with LAE arguing that RemX breached the VAR by failing to pay LAE the remaining $88 million USD outstanding on the contract on which RemX only deposited $12 million USD, and RemX arguing that LAE should be required to refund the $12 million USD it paid to LAE, which RemX maintains was made pursuant to the OTC. (*See generally, id*.)

On May 31, 2023, the Court granted LAE's initial *ex parte* application seeking the issuance of letters rogatory, permitting LAE to subpoena Mr. Demuren to obtain discovery for use in the Hong Kong Matters. Order of 5/31/2023; Docket Entry No. 7. Mr. Demuren now seeks to quash the subpoena issued by LAE and vacate the Court's Order of May 31, 2023.

II.     **Legal Standard**

Pursuant to 28 U.S.C. § 1782, a federal district court may order that discovery be provided in aid of a foreign proceeding when the applicant seeking same, at a minimum, establishes the

2

following statutory requirements: (1) the application is made by a foreign or international tribunal or any interested party; (2) the person from whom discovery sought resides or is found in the district in which the application is made; and (3) the discovery is for use in a proceeding in a foreign or international tribunal. 28 U.S.C. § 1782(a); *see also Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241, 255-59, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (discussing statutory requirements of § 1782(a)). However, even where these requirements are met, whether discovery is permitted under § 1782(a) lies within the broad discretion of the Court. *See Intel*, 542 U.S. at 264 (noting "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."); *see also In re Yilport Holding A.S.*, 22-3028-ES-AME, 2023 WL 2140111, at *3 (D.N.J. Feb. 21, 2023) (recognizing even where "basic requirements" of statue are met, "the decision to authorize discovery pursuant to Section 1782 lies within a court's broad discretion.")

In *Intel*, the United States Supreme Court identified the following four factors as pertinent to the Court's decision regarding whether to permit the discretionary discovery: "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests." *In re O'Keefe*, 646 Fed. Appx. 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264-65).

Importantly, "[a]n order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's right to file a motion to vacate the

order and/or quash the subpoena." *In re Yilport*, 2023 WL 2140111, at *3. Because "Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure" (*Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999)), the Court may quash or modify a subpoena issued pursuant to § 1782(a) in accordance with the Federal Rules of Civil Procedure. Further, given the *ex parte* nature of most § 1782(a) applications, it is unsurprising that many subpoenaed individuals will seek to quash or modify the issued subpoena, finding it necessary to add their perspective to the matter initially considered by the Court only with the information provided by the applicant.

### III. Discussion

#### A. The Parties' Arguments

Mr. Demuren challenges the subpoena issued by LAE, arguing that it does not meet the "for use" requirement set forth in § 1782(a), and further arguing, even if the Court thought the requirement was met, pursuant to the *Intel* factors the subpoena should be quashed. In addition, Mr. Demuren contends that the subpoena should be quashed because of LAE's lack of candor with the Court.

With respect to § 1782(a)'s "for use" requirement, Mr. Demuren argues that LAE must establish both that the information sought is relevant to the subject matter of the Hong Kong Matters and that it will increase LAE's chances of success in those proceedings. (*See* Resp. Br. at 9 (citing *In re Schlich*, 16-MC-319 (VSB), 2017 WL 4155405, at *5 (S.D.N.Y. Sept. 18, 2017))). Mr. Demuren argues that LAE fails to meet this standard. In the first instance, Mr. Demuren claims that "[t]here is **no evidence** in the record in either action pending before the Hong Kong High Court that Mr. Demuren had any participation in and/or any information about the discussions, negotiations, performance, and/or execution of said disputed agreements." (Resp. Br. at 9). Indeed,

4

Mr. Demuren argues that LAE has made no showing that he has any of the requested records in his personal capacity. (*See id.* at 17). While Mr. Demuren acknowledges that he was involved in negotiations concerning the "Agora Stable Coin," Mr. Demuren argues that this "was a different contemplated business transaction, and one which was not pursued and not party of any of the contract(s) (or disputed legal issues), pending in the Hong Kong proceedings." (Resp. Reply at 2; Docket Entry No. 17). Further, Mr. Demuren claims that LAE's attempt to rely on hearsay within hearsay statements regarding his alleged involvement with the VAR and OTC should not be countenanced. Mr. Demuren also claims that the fact that he, as the Chief Executive Officer of RemX, signed an email and termination letter seeking the return of the disputed funds should not be viewed as support for LAE's claim that Mr. Demuren has "relevant evidence as to the actual negotiation, intent, execution, and expectations of the parties as it relates to the disputed contracts at the heart of the Hong Kong proceedings." (*Id*. at 3).

Moreover, irrespective of Mr. Demuren's personal lack of relevant, discoverable information, Mr. Demuren argues that the actual information sought is not relevant to the subject matter of the Hong Kong Matters. Mr. Demuren argues that Document Requests 5-11 seek "sweeping discovery from Mr. Demuren into any and all information and/or documents which may belong to RemX that has nothing to do with the pending dispute(s) in Hong Kong[.]" (Resp. Br. at 9). Indeed, these requests, seek the following broad categories of information:

> Document Request 5: All RemX account statements, distribution records, or other documents or communications sufficient to identify RemX's account(s) and/or trading activities with Binance US between March 2020 through February 2021.
>
> Document Request 6: All Documents submitted by RemX to any Identified Financial Institution, and all Communications with any Identified Financial Institution, in connection with opening or attempting to open a RemX account or sub-account at such Identified Financial Institution.

5

<u>Document Request 7</u>: All Documents submitted by RemX to any Identified Financial Institution, and all Communications with any Identified Financial Institution, in connection with such Identified Financial Institution's due diligence, know-your-customer, anti-money laundering, and/or other compliance or legal review or process.

<u>Document Request 8</u>: Any Dummy Agreement submitted and/or provided by RemX to any Financial Institution and all Communications with such Financial Institution concerning such Dummy Agreement.

<u>Document Request 9</u>: All Communications with any Financial Institution concerning any Same Company Funds Transfer(s) that RemX requested and/or directed such Financial Institution to complete.

<u>Document Request 10</u>: Any draft, template, or model Document used by RemX to create any Dummy Agreement or to request or facilitate any Same Company Funds Transfer(s).

<u>Document Request 11</u>: Documents sufficient to identify the place of incorporation and any Beneficial Owner of, and the corporate affiliation between or among, any of the following companies:

   a. Boltpay

   b. Multigate Ltd.

   c. RemX Capital Ltd.

   d. RemX Group Holding Ltd.

   e. RemX Inc.

   f. RemX LLC

   g. RemX-UK Ltd.

   h. Venture Garden Group Inc.

   i. Venture Garden Inc.

(Pet. Proposed Subpoena; Docket Entry No. 1-1)

Furthermore, Mr. Demuren maintains that, even if the information sought was relevant to the Hong Kong Matters, this is insufficient because the "for use" requirement of § 1782(a) demands more. Mr. Demuren argues that LAE is required to show how the information sought

6

"would be used in the Hong Kong High Court proceedings[,]" including how it would increase LAE's chances of success. (Resp. Br. at 11). Mr. Demuren claims that because LAE fails to explain "the purpose that the alleged discovery would serve and how it would be used in the Hong Kong proceeding to advance an advantage or use for LAE[,]" LAE has failed to meet the "for use" requirement of § 1782(a), and, therefore, its subpoena must be quashed. (Resp. Reply at 4).

Mr. Demuren also argues that the discovery sought by LAE runs afoul of the *Intel* factors. First, Mr. Demuren argues that LAE's subpoena is directed at information in the possession of RemX and LAE, party participants in the Hong Kong proceedings and within the foreign court's jurisdiction. Mr. Demuren claims that none of LAE's requests are "related to and/or directed at materials which Mr. Demuren might have in his personal possession, custody, or control, rather they are all records which would belong to and be maintained (to the extent such records even exist) by RemX. (Resp. Br. at 12).

Second, Mr. Demuren argues that the second and third *Intel* factors, the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government to U.S. federal-court judicial assistance, as well as whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States, favor quashing LAE's subpoena. Mr. Demuren claims that the rules governing discovery in the Hong Kong matters are "both robust and comprehensive." (Resp. Br. at 13). Mr. Demuren notes that LAE has never sought to utilize same to obtain discovery in the Hong Kong matters. Mr. Demuren argues that "there is no good explanation for Petitioner's failure to even *try* to obtain he documents sought by the 1782 subpoena from RemX in the foreign Hong Kong High Court proceedings and Petitioner has failed to make the requisite showing required to

demonstrate a need for documents which it otherwise should be seeking in the foreign proceedings." (*Id*. at 14).

Third, Mr. Demuren contends that LAE's subpoena runs counter to the fourth *Intel* factor because its requests are unduly intrusive and burdensome. Mr. Demuren claims that LAE's "subpoena requests seek documents and evidence found entirely within the records of the two parties which are participants in the Hong Kong proceedings (located in Hong Kong and Kenya respectively), and go far beyond the narrow issue being litigated in the Hong Kong High Court proceedings – namely, whether the OTC or VAR is valid and enforceable." (*Id*. a 16). Mr. Demuren argues that the breadth alone of the subpoena requests make them burdensome, such that the subpoena should be quashed. Moreover, Mr. Demuren contends that LAE "has made no showing that Mr. Demuren has *any* of these records in his personal capacity." (*Id*. at 17). As such, Mr. Demuren contends that the subpoena should be quashed.

Additionally, the *Intel* factors notwithstanding, Mr. Demuren argues that LAE's lack of candor with respect to the findings of the Hong Kong High Court's March 30, 2022, decision, denying LAE's motion for summary judgment filed in H.C.A. 346/2021, as well as its failures to seek any party discovery in the Hong Kong matters, provides an independent basis on which to quash LAE's subpoena. (*See id*. at 18). Last, Mr. Demuren contends that if the Court does not quash the subpoenas, the Court should modify same and require LAE to bear the cost of Mr. Demuren's compliance. (*See id*. at 19; Resp. Reply at 10).

In contrast, LAE argues that its subpoena is entirely appropriate, and that Mr. Demuren should be compelled to comply with same. Via its subpoena, LAE seeks both deposition testimony and documents from Mr. Demuren. The subpoena simply commands Mr. Demuren to appear for a deposition; as is the norm for depositions of individuals, the subpoena does not specify the topics

8

on which Mr. Demuren will be deposed. Further, the subpoena directs Mr. Demuren to produce the information requested in Document Requests 5-11 as outlined above as well as the following information:

> <u>Document Request 1</u>: All Communications between RemX and LAE and all Documents concerning or recording such Communications.
>
> <u>Document Request 2</u>: All Documents, including Communications internal to RemX or with any other Person, concerning LAE.
>
> <u>Document Request 3</u>: All Documents, including Communications internal to RemX or with an other Person, concerning the RemX/LAE Agreements.
>
> <u>Document Request 4</u>: All Documents concerning any proposed, intended or actual financial transaction or payment related to the RemX/LAE Agreements, including but not limited to, invoices, receipts, billing statements, requests for wire transfers, credit agreements, proof of funds, income statements, and any Communications, notes, or records regarding such transactions or payments.

(Pet. Proposed Subpoena; Docket Entry No. 1-1)

LAE argues that Mr. Demuren is likely to have relevant information regarding these requests because "Mr. Demuren was a key decision maker regarding negotiations, execution, and performance of both the VAR and the OTC." (Wu Decl. ¶ 8). In support of this assertion, LAE references various pieces of evidence, including the inclusion of Mr. Demuren in certain email communications, invitations and participation in Zoom meetings and conference calls, a reference to Mr. Demuren breathing down the neck of Eghosa Nehikhare regarding the OTC, Mr. Demuren personally transmitting RemX's termination letter regarding the OTC to LAE, and Mr. Demuren personally writing to the CEO of the Legacy Trust, the intermediary from RemX's $12 million USD payment, regarding LAE's alleged breach of its obligations to RemX. (Pet. Opp. Br. at 3-4).

LAE claims that the information it seeks from Mr. Demuren is relevant to the allegations raised in the Hong Kong Matters. Specifically, LAE contends that its subpoena "requests important information regarding RemX's conduct while RemX was engaged in negotiations with LAE over

the VAR and the OTC. LAE argues that the evidence obtained would be relevant to the key issues of whether the VAR and the OTC are both legally valid and enforceable agreements, and whether the $12 million USD was paid pursuant to the VAR (as LAE alleges) or the OTC (as RemX alleges)." (Wu Decl. ¶ 6). LAE maintains that the deposition testimony and documents it seeks would "assist LAE in proving and defending its claims against RemX in the HK Proceedings by supporting LAE's contention that the VAR is a valid and legally enforceable agreement, that it is not a 'dummy agreement' (as alleged by RemX), and that the $12 million USD paid by RemX was in partial performance of the VAR. The evidence would also assist LAE in showing that LAE was, for good reason, unable to do business under the OTC due to RemX's failure to comply with LAE's reasonable KYC and AML due diligence efforts." (*Id*. ¶ 7). As a result, LAE contends that its subpoena meets the "for use" requirement of § 1782(a).

Further, LAE argues that upon consideration of the *Intel* factors, the Court should exercise its discretion to compel Mr. Demuren to comply with its subpoena. LAE states that it "is not seeking to have Mr. Demuren collect and produce documents that are in the possession of RemX; LAE simply is asking Mr. Demuren to search for and produce relevant documents in response to the narrowly tailored Subpoena that are in his possession, custody, or control – documents that the Hong Kong High Court could not order him to produce  (as Mr. Demuren does not contest) in the Hon Kong Proceedings." (Pet. Opp. Br. at 8). Moreover, LAE claims that Mr. Demuren's bald assertion that all of the information sought is in the possession of LAE or RemX "is wholly unsupported and actually undermined by just the exemplar evidence LAE outlined in its Application and here." (*Id*. at 9).

In addition, LAE asserts that the Hong Kong procedural rules permit the consideration of evidence obtained from foreign forums, like the United States federal court. Further, LAE claims

that the discovery it seeks via its subpoena to Mr. Demuren would be accepted by the Hon Kong courts in the Hong Kong Matters. (*See* Pet. Opp. Br. at 10-11 (citing Wu Decl. ¶¶ 10, 22-23)). In addition, LAE argues that it has been candid with the Court and there is no basis to quash its subpoena because of an alleged lack of candor. Likewise, LAE argues there is no basis to shift the cost of compliance with the subpoena onto LAE. Under these circumstances, LAE maintains that Mr. Demuren should be compelled to comply with the issued subpoena, and that his motion to quash and vacate should be denied.

### B. Analysis

Tthe Court begins its analysis with § 1782(a)'s "for use" requirement. Under § 1782(a)'s "for use" requirement, an applicant must do more than simply establish the relevance of the information sought. Indeed, as explained in *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P*:

> The relevance of the information sought to the subject of the proceeding is not sufficient in and of itself to authorize the district court to order discovery. By adopting the phrase "for use," Congress plainly meant to require that § 1782 applicant show that the evidence sought is "something that will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 297 . . . . The key question, therefore, is not simply whether the information sought is relevant, but whether the [applicant] will actually be able to use the information in the proceeding.

*Certain Funds*, 798 F3d 113, 120 (2d Cir. 2015); *see In re Yilport*, 2023 WL 214011, at *6 (relying on Second Circuit's decision in *Certain Funds*).

In reviewing LAE's requested discovery, in the first instance, the Court finds that LAE has failed to establish the relevance of Document Requests 6-11. On their face, these requests, which contain no temporal scope, are overbroad. Moreover, the Court finds that even if narrowed to a limited timeframe, the substance of these requests, as well as Document Request 5, are only

11

marginally related to the subject matter of the Hong Kong Matters. Given the tenuous relevance of Document Requests 5-11, the Court shall not require Mr. Demuren, a non-party to the Hong Kong Matters, to answer same. The Court finds Document Request 5-11's lack of relevance to be fatal to the "for use" analysis.[1]

In contrast, the Court finds that Document Requests 1-4, which are focused on RemX and LAE's relationship, seek relevant information. Mr. Demuren does not argue otherwise. Further, despite Mr. Demuren's arguments to the contrary, the Court finds that LAE has specified how it intends to use the information sought in these requests in the Hong Kong Matters. Indeed, LAE has explained that it would use the information obtained from Mr. Demuren to prove and defend its claims against RemX by supporting LAE's contention that the VAR is a valid and legally enforceable agreement, that it is not a 'dummy agreement' (as alleged by RemX), and that the $12 million USD paid by RemX was in partial performance of the VAR. LAE has also stated that it would use the requested information to establish that LAE was "unable to do business under the OTC due to RemX's failure to comply with LAE's reasonable KYC and AML due diligence efforts." (Wu Decl. ¶ 7).[2]

Having determined that LAE has satisfied the "for use" requirement with respect to Document Requests 1-4 and Mr. Demuren's deposition, the Court turns next to the *Intel* factors to determine whether, in its discretion, the Court shall uphold LAE's subpoena with respect to Document Requests 1-4 and the request to depose Mr. Demuren.

---

[1] Given the minimal relevance of the requests, the Court also finds that it would be unduly burdensome to require Mr. Demuren to search for the requested information. This is particularly true given that Requests 5-11 seek information most likely to be in the possession, custody and control of RemX and LAE, not in Mr. Demuren's personally.
[2] Considering the Court's findings with respect to Document Requests 1-4, the Court also finds that, to the extent LAE sought to depose Mr. Demuren on similar topics, the requested deposition would also meet the "for use" requirement of § 1782(a).

LAE has explicitly stated that it "is not seeking to have Mr. Demuren collect and produce documents that are in the possession of RemX; LAE simply is asking Mr. Demuren to search for and produce relevant documents in response to the narrowly tailored Subpoena that are in his own possession, custody, or control[.]" (Pet. Opp. Br. at 8). Given this assertion, it is not accurate to say that LAE, through its subpoena, seeks information that can be found within the jurisdiction of the Hong Kong courts. While Mr. Demuren argues that there is no evidence of his involvement with the discussions, negotiations, performance, and/or execution of the disputed agreements, the Court finds that argument to be flawed. There is evidence that Mr. Demuren was involved in the termination of the OTC and that he used personal communication methods, such as personal email, WhatsApp, etc. to discuss negotiations between RemX and LAE. While Mr. Demuren argues that these communications relate to earlier negotiations, not the VAR or OTC, it is not unreasonable for LAE to request that Mr. Demuren search his personal records, devices, accounts, etc. for communications related to the VAR and OTC. Further, to the extent any such information exists, it appears unlikely that Mr. Demuren could be compelled to produce such evidence in the Hong Kong Matters. (*See* Second Wu Decl. ¶ 5 (noting that Mr. Demuren is outside jurisdiction of Hong Kong courts for discovery purposes and, even if he were within jurisdiction, it is unlikely Mr. Demuren could be compelled to provide evidence there because there is no arrangement for mutual recognition and enforcement of court orders between Hong Kong and United States). Under these circumstances, the Court finds that the first *Intel* factor, "whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid[,]" favors LAE. *In re O'Keefe*, 646 Fed. Appx. at 266 (citing *Intel*, 542 U.S. at 264-65)

The Court finds that the second *Intel* factor, namely, consideration of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

13

foreign government or the court or agency abroad to U.S. federal-court judicial assistance[,]" similarly favors LAE. *Id*. While Mr. Demuren groups the second and third *Intel* factors together, he only addresses the third factor in seeking to quash LAE's subpoena. Mr. Demuren fails to address LAE's contention that "(1) the Hong Kong procedural rules allow for the consideration of foreign-obtained evidence, and (2) the evidence LAE seeks *would* be accepted by the Hong Kong courts in the Hong Kong Proceedings." (Pet. Opp. Br. at 11 (citing Wu Decl. ¶¶ 10, 22-23).

With respect to the third *Intel* factor, "whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States[,]" the Court finds that this factor somewhat favors Mr. Demuren. *In re O'Keefe*, 646 Fed. Appx. at 266 (citing *Intel*, 542 U.S. at 264-65). To date, LAE has not pursued any discovery in the Hong Kong Matters. LAE has also taken an unhurried approach to its appeal, resulting in the continued stay on automatic discovery in the Hong Kong matters. These circumstances support an inference that LAE may be attempting to circumvent foreign proof gathering restrictions or other policies by seeking to obtain discovery from Mr. Demuren.

Turning to the fourth *Intel* factor, "whether the subpoena contains unduly intrusive or burdensome requests[,]" the Court finds that, on different fronts, this factor supports both Mr. Demuren and LAE. *Id*. On the current record, there is no evidence that Mr. Demuren has significant personal knowledge regarding the Hong Kong Matters. Nevertheless, under the circumstances of this case, the Court finds that there is nothing unduly intrusive or burdensome with requiring Mr. Demuren to search his personal files for information responsive to Document Requests 1-4. Indeed, despite Mr. Demuren's conclusory statements to the contrary, the Court finds that such a search would be neither intrusive nor burdensome.

The same, however, cannot be said for requiring Mr. Demuren to appear for a deposition. The Court notes that Mr. Demuren is the Chief Executive Office of RemX.

> Courts have overwhelmingly recognized that "depositions of high-level officers severely burden[ ] those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." *United States ex rel. Galmines v. Novartis Pharma. Corp.*, Civ. A. No. 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015). Therefore, when the person from whom discovery is sought is a corporate executive, the Court's analysis is guided by the so-called apex doctrine, which applies "a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue." *Id.* at *2. *See Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (requests for depositions of high-ranking corporate officers are subject to protections of the apex doctrine).[4] In assessing whether the deposition of a corporate executive is appropriate, the Court considers "(1) whether the executive or top-level employee has personal or unique knowledge on relevant subject matters; and (2) whether the information sought can be obtained from lower-level employees or through less burdensome means, such as interrogatories." *Ford Motor Co. v. Edgewood Props., Inc.*, Civ. A. No. 06-1278, 2011 WL 2517133, at *3 (D.N.J. June 23, 2011) (quotation and alteration omitted). *See Hickey v. North Broward Hosp. Dist.*, No. 14-cv-60542, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014) ("[A] party seeking to depose a high ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.").

*Harapeti v. CBS Television Stations Inc.*, No. CV2115675JXNLDW, 2021 WL 8316391, at *2 (D.N.J. Dec. 1, 2021), *report and recommendation adopted*, No. CV2115675JXNLDW, 2021 WL 8316385 (D.N.J. Dec. 17, 2021). Given the lack of any showing that Mr. Demuren has specific personal or unique knowledge regarding the Hong Kong matters or that the information cannot be obtained from other sources, the Court finds that it would be unreasonably burdensome to require Mr. Demuren to sit for a deposition.

15

After considering the foregoing, including Mr. Demuren's arguments concerning LAE's purported lack of candor, the Court grants in part and denies in part Mr. Demuren's motion to quash LAE's subpoena and to vacate the Court's Order of May 31, 2023. The motion is granted in that the subpoena is quashed as to the requested deposition of Mr. Demuren and as to Document Requests 5-11. The subpoena, however, is upheld with respect to Document Requests 1-4. Mr. Demuren is directed to comply with the subpoena and provide responses to Document Requests 1-4. The cost of compliance is Mr. Demuren's to bear.

## IV.     Conclusion

For the reasons stated above, Mr. Demuren's motion to quash the subpoena served upon it by LAE and to vacate the Court's Order entered on May 31, 2023, authorizing the issuance of the subpoena, is GRANTED in part and DENIED in part.   An appropriate Order follows.

Dated:  February 29, 2024

          s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**